# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

ROBERT CLARK, individually and on
behalf of himself and all others similarly
situated,

      Plaintiff,

   v.

JOHN M. FORMELLA, in his official
capacity only as Attorney General of the
State of New Hampshire,

      Defendant.

Case No.: 1:25-cv-379-PB-AJ

## PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

As in similar cases, each element of Rule 23 is straightforwardly satisfied here.[1]  This is a classic case suited for class certification.

## I.    Class certification is necessary.

Defendant argues that class certification is not "appropriate, necessary, or useful."  Def.'s Obj. at 4.  Defendant claims this to be true because—as in *Local 802 v. Edelblut*, No. 21-cv-1077-PB, 2024 U.S. Dist. LEXIS 94052, at *50-51 (D.N.H. May 28, 2024), where this Court provided only declaratory, not injunctive relief—"[t]his Court has 'no reason to believe that the defendant[] will fail to respect this court's ruling' if it were to rule that RSA 644:6 is facially unconstitutional." *Id.* at 5 (quoting *Local 8027*).  At the outset, it is premature at this early stage to decide whether, as in *Local 8027*, only declaratory relief is appropriate given Defendant's assurances.  But even if such assurances are considered now, this argument fails.

In *Dionne v. Bouley*, 757 F.2d 1344 (1st Cir. 1985), the First Circuit considered whether district courts must follow a practice "of denying class certification under Rule 23(b)(2)[] when a class is not needed to obtain the same relief." *Id.* at 1355.  The *Dionne* Court did not accept the idea of "a strict 'necessity requirement' under Rule 23(b)(2)." *Id.* at 1356.  Rather, the Court looked "to the discretion that the district court enjoys under the rule to deny class certification should it reasonably determine that class relief is not 'appropriate.'" *Id*.  In other words, "the justification for denying class certification rests on the particular circumstances." *Id.*[2]

---

[1] *See, e.g., Barbara v. Trump*, 790 F. Supp. 3d 80 (D.N.H. 2025) (Laplante, J.) (appeal pending before U.S. Supreme Court on merits, not provisional class certification; argued on Apr. 1, 2026); *B.D. v. Sununu*, No. 21-cv-4-PB, 2024 U.S. Dist. LEXIS 167912 (D.N.H. Sept. 18, 2024) (Barbadoro, J.); *Fitzmorris v. Weaver*, No. 21-cv-25-PB, 2023 U.S. Dist. LEXIS 209980 (D.N.H. Nov. 27, 2023) (Barbadoro, J.); *Gomes v. Acting Sec'y, U.S.  Dep't of Homeland Sec.*, 561 F. Supp. 3d 93 (D.N.H. 2021) (McCafferty, C.J.); *Doe v. Comm'r*, No. 18-cv-1039-JD, 2020 U.S. Dist. LEXIS 78387 (D.N.H May 4, 2020) (DiClerico, J.).

[2] *See also Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297, 309-310 (3d Cir. 2016) (surveying circuits and adopting the First Circuit's "middle ground" approach that "necessity is not a freestanding requirement justifying the denial of class certification"; adding that "[t]he circumstances in which classwide relief offers no further benefit … will be rare, and courts should exercise great caution before denying class certification on that basis.").

Further, the Seventh Circuit has rejected any necessity requirement, and multiple other courts—along with the Third Circuit—have similarly refused to impose any such "strict" requirement. *See, e.g., Vergara v. Hampton*,

*First*, in *Dionne*, "[o]ne factor that a court may properly take into account is the fact—if it be a fact—that the same relief can, for all practical purposes, be obtained through an individual injunction without the complications of a class action." *Dionne*, 757 F.2d at 1356. Here, class certification is necessary because Defendant does not even believe that an individual injunction should be issued as to the class representative, let alone an individual injunction that may render a class action unnecessary by having the ancillary effect of benefiting those similarly situated. Moreover, as the Supreme Court recently held in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), relief for similarly situated individuals generally can no longer be obtained through an individual injunction. *Id*. at 861. Unlike *Dionne* where the Court there found "no abuse of discretion in the court's denial of class certification on the ground that any injunctive or declaratory relief will inure to the benefit of all those similarly situated" and where the district court was permitted to issue an injunction broadly enjoining enforcement practices that effectively benefited those other than the individual plaintiff, *see Dionne*, 757 F.2d at 1356, 1345, *CASA* now presents the conundrum where such broad relief benefiting similarly situated individuals may not be possible.[3] Thus, class

---

581 F.2d 1281, 1284 (7th Cir. 1978) ("[T]he rule in this circuit is that class certification may not be denied on the ground of lack of 'need' if the prerequisites of Rule 23 are met." (first citing *Fujishima v. Bd. of Educ.*, 460 F.2d 1355, 1360 (7th Cir. 1975); then citing *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir. 1976)); *Brown v. Scott*, 602 F.2d 791, 795 (7th Cir. 1979) (noting it was bound "to require class certification" to a facial and as-applied challenge to a picketing ordinance); *Daves v. Dallas Cnty, Tex.*, Civ. No. 3:18-cv-154-N, 2018 U.S. Dist. LEXIS 160742, 2018 WL 4537202 at *9-10 (N.D. Tex. Sept., 20, 2018) (declining to deny class certification due to lack of need; noting that "the Fifth Circuit [is] yet to pick one side over the other," yet "[t]he Fifth Circuit has decided, however, that it is an abuse of discretion to refuse to certify an otherwise appropriate class because of 'lack of need' when there is a risk of mootness.") (internal quotations omitted); *Littlewolf v. Hodel*, 681 F. Supp. 929, 937 (D.D.C. 1988) ("Were class certification inappropriate if 'unnecessary,' it would be inappropriate whenever only injunctive relief is sought, as the proposed relief would apply to all persons, whether class members or not. Thus, the idea that a class may be certified only if 'necessary' flies in the face of the Federal Rules."), *judgment aff'd on other grounds*, 877 F.2d 1058 (D.C. Cir. 1989); *Save Our Schools-Southeast & Northeast v. D.C. Bd. of Educ.*, No. 04-01500 (HHK), 2007 U.S. Dist. LEXIS 114325, at *15 n.9 (D.D.C. Dec. 11, 2007) (rejecting defendants' argument that class certification should be denied because plaintiffs seek declaratory and injunctive relief against the government); *see also*; 7AA Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1785.2 (3d ed.) (discussing the "necessity" doctrine and criticizing those court decisions invoking a "necessity" requirement as often lacking "any analysis of whether in the particular case at hand it is appropriate to conclude that the same result could be achieved by individual litigation that would occur using Rule 23, or whether, even if the ultimate judgment in an individual action would benefit all affected by defendant's conduct, there are other reasons that support the need for class relief").

[3] *See Nat'l Educ. Ass'n-New Hampshire v. NH AG*, No. 25-cv-293-LM, 2025 U.S. Dist. LEXIS 195238, *75 (D.N.H.

certification "is the only way to achieve uniformity of equitable relief for past enforcement, and to effectively prevent any future enforcement across the state." *See Brown v. Kelly*, 244 F.R.D. 222, 237 (S.D.N.Y. 2007).

The cases Defendant cites for the proposition that Defendant "is presumed to follow the law and enforce it constitutionally," *see* Def.'s Obj. at 5-6, pre-date *CASA* and do not even address class certification. On top of that, Defendant cannot be "presumed to follow the law" here where the local police departments that Defendant supervises under RSA 7:6 repeatedly have enforced an unconstitutional law against people in New Hampshire—including in approximately 56 cases initiated from October 1, 2025, to December 31, 2025, *after this lawsuit was filed*. *See Exhibit 3*. And, here, Defendant has not offered a court-approved stipulation unequivocally stating that, despite *CASA*, any relief provided to the individual Plaintiff will apply more broadly to similarly situated individuals. Indeed, Defendant appears to contest the scope of the class altogether, which sows doubt on whether Defendant is "committed to according all members of the proposed class relief based upon a single action." *See Gulino v. Bd. of Educ. of City Sch. Dist.*, 201 F.R.D. 326, 334 (S.D.N.Y. 2001). Thus, here, the bestowal of "relief on a class-wide basis ensures an efficient judicial remedy to any deficiency in" Defendant's future enforcement conduct. *See Van Meter v. Harvey*, 272 F.R.D. 274, 284 (D. Me. 2011).[4]

*Second*, the *Dionne* Court explained that one "other consideration[] [that] may render a denial of certification improper" is whether "there is a danger that the individual claim might be moot." *Dionne*, 757 F.2d at 1356 (citations omitted).[5] This consideration also independently

---

Oct. 2, 2025) (explaining limitations on scope of injunctive relief set forth in *CASA*, and declining to issue statewide injunction) (McCafferty, J.).

[4] *See also Laurido v. Simon*, 489 F. Supp. 1169, 1174 (S.D.N.Y. 1980).

[5] *Cf. Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 326-327 (D. Mass. 1997) ("The danger of mootness is great enough in the instant litigation to necessitate class certification. Students graduate, transfer, drop out, move away, grow disinterested, fall in love."); *see also G.K. v. Sununu*, No. 21-cv-4-PB, 2024 U.S. Dist. LEXIS 167906, at *14 (D.N.H. Sept. 18, 2024) ("Thus, although mootness of a named plaintiff's individual claim prior to class certification

3

supports certification.  Not only does Plaintiff have an obligation to seek class certification "[a]t an early practicable time after a person sues or is sued as a class representative," *see* Fed. R. Civ. P. 23(c)(1)(A), but class certification also may be necessary here to the extent concerns are raised as to whether the named Plaintiff's individual claims have become moot during this case's likely lengthy duration.  Here, Plaintiff—as someone who was unhoused for 13 years until only recently in December 2025 (after this lawsuit and class certification motion was filed)[6]—has been subject to the "unpredictable nature of homelessness."  *See Cross v. City of Sarasota*, No. 15-CV-02364-EAK-JSS, 2016 U.S. Dist. LEXIS 80772, at *9 (M.D. Fla. June 21, 2016).[7]  Defendant has not disclaimed mootness concerns and, even if Defendant did, arguments pertaining to subject matter jurisdiction cannot be waived.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

*Lastly*, the *Dionne* Court explained that one "other consideration[] [that] may render a denial of certification improper" is where "class certification does not impose any significant burden on the court."  *Dionne*, 757 F.2d at 1356.  This consideration too supports certification.  As this is a straightforward case about the facial constitutionality of RSA 644:4, class certification

---

may render the class claims moot, mootness of a named plaintiff's individual claim after certification will not.") (Barbadoro, J.); *Sosna v. Iowa*, 419 U.S. 393, 399 (1975) (holding that mootness of the named plaintiff's individual claim after a class has been duly certified does not render the action moot); *id.* at 402 n. 11 ("There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980) ("Although one might argue that *Sosna* contains at least an implication that the critical factor for Art. III purposes is the timing of class certification, other cases, applying a 'relation back' approach, clearly demonstrate that timing is not crucial. When the claim on the merits is 'capable of repetition, yet evading review,' the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation …. But it has been applied where the named plaintiff does have a personal stake at the outset of the lawsuit, and where the claim may arise again with respect to that plaintiff; the litigation then may continue notwithstanding the named plaintiff's current lack of a personal stake.") (internal citations omitted).

[6] Plaintiff is now living in an apartment in Franklin, which began on around December 11, 2025—over two months after this lawsuit was filed on September 30, 2025.  Plaintiff disclosed this fact to Defendant on December 18, 2025.

[7] *See also Poe v Snyder*, 834 F. Supp. 2d 721, 729 (W.D. Mich. 2011) ("Even though some Plaintiffs have found more permanent housing, it is likely that Plaintiffs will need the services of an emergency overnight shelter in the future."); *City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520, 553 (2024) ("Often, a city's homeless population fluctuates dramatically, in part because *homelessness is an inherently dynamic status*.") (emphasis added).

4

adds no complexity to this case, just as it added no complexity to the recent birthright citizenship case in which provisional class certification was granted.[8]  Further, Defendant is not prejudiced by certification, especially where "nothing would prevent Defendant from moving to decertify the class or to revise the class definition" if circumstances materially change in the future.  *See Campbell v. First Am. Title*, 269 F.R.D. 68, 79 (D. Me. 2010); *see also* Fed. R. Civ. P. 23(c)(1)(C).

## II.    The proposed class easily satisfies the numerosity requirement.

Defendant argues that Plaintiff has failed to establish that 40 prosecutions of RSA 644:6 "currently" are (or will ever be in the future) pending "at the same time at any point."  Def.'s Obj. at 8.  Setting aside Defendant's incorrect assumption that Rule 23 imposes a "simultaneously at the same point in time" standard for numerosity,[9] Defendant's argument both defies reasonableness under numerosity's "low threshold" and is factually wrong.  *First*, given the sheer number of loitering prosecutions—here, approximately 2,364 from January 1, 2013, to December 31, 2024—it is obvious that there are at least 40 loitering prosecutions occurring simultaneously at any given time.  *Second*, the evidence proffered by Plaintiff establishes that there are well over 40 pending loitering prosecutions occurring "at any given time."  Of the approximately 245 cases

---

[8] *See, e.g., Barbara v. Trump*, 790 F. Supp. 3d 80, 86 (D.N.H. 2025) (Laplante, J.) (appeal pending before U.S. Supreme Court on merits, not provisional class certification; argued on Apr. 1, 2026).

[9] *See Lewis v. U.S. Parole Comm'n*, No. 1:22-cv-2182-RCL, 2026 U.S. Dist. LEXIS 69896, at *34 (D.D.C. Mar. 31, 2026) ("Inherently fluid classes are those where 'strict numerical threshold[s]' and 'sheer numerical terms' take a backseat to Rule 23's textual focus on the practicability of joinder.") (quoting *N.S. v. Hughes*, 335 F.R.D. 337, 352-53 (D.D.C. 2020).  Indeed, all that is required is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, joinder of all members is impracticable.  In addition to the sheer volume of loitering cases that makes joinder impracticable, RSA 644:6 has rarely been the subject of a facial challenge.  Individuals charged under this statute—especially those who are poor or unhoused—often do not have access to counsel, let alone the means, experience, and motivation to develop a record to litigate facial constitutional claims such as those brought here.  Though effectively quasi-criminal in nature, "loitering or prowling" is a "civil" violation-level offense, which carries a maximum penalty of a fine up to $1,000, *see* RSA 651:2, IV(a), plus a 24% penalty assessment (for a total $1,240.00).  Because this charge does not lead to a term of imprisonment, people charged only under RSA 644:6 are not entitled to court-appointed counsel if they are indigent.  Compl. ¶ 71 (ECF No. 1).  And if a facial constitutional challenge is raised, the State also can drop a charge under RSA 644:6 to avoid judicial review of the statute's constitutionality.  This appears to be what occurred in one recent case, where a constitutional challenge was raised in Circuit Court, and then that charge was dropped.  *Id.* ¶ 77.

filed in New Hampshire courts in all of 2025 where loitering was charged, ***approximately 127*** (nearly 52%) were not disposed of—and thus should be viewed as pending—as of December 31, 2025.  *See* ECF Nos. 1-12 (Exhibit L to Compl.); *Exhibit 3*.[10]

As for the class's inclusion of those against whom Defendant "will enforce" RSA 644:6 in the future, "the fact that a policy will continue to harm future class members is relevant to numerosity."  *Barbara v. Trump*, 790 F. Supp. 3d 80, 92 (D.N.H. 2025) (Laplante, J.).  Further, "the inclusion of future class members in a class is not itself unusual or objectionable, because when the future persons referenced become members of the class, their claims will necessarily be ripe."  *Betschart v. Oregon*, 103 F.4th 607, 616 n.7 (9th Cir. 2025) (cleaned up).  Here, given the volume of loitering prosecutions since 2013, over 40 individuals will be subjected to a loitering prosecution in the future.  Thus, "an influx of future members will continue to populate the class ... at indeterminate points in the future," thereby making joinder "not merely impracticable but effectively impossible."  *See Barbara*, 790 F. Supp. 3d at 92 (quoting cases).[11]

### III.    Commonality and typicality too are easily satisfied.

Defendant does not dispute—because it cannot—that Defendant and the police departments that the Attorney General supervises have a common and well-defined practice of enforcing RSA 644:6 against people in New Hampshire.  Nonetheless, Defendant argues that commonality is not met because the "application of RSA 644:6 will often be fact intensive" such

---

[10] This analysis was done by ascertaining how many of the approximately 245 loitering cases filed in 2025 (as reflected in the "Criminal Filings Detail" spreadsheets in *Exhibit L* and *Exhibit 3*) were disposed of at any time in 2025 based on a review of the "Criminal Disposition Detail" spreadsheets in these same two exhibits.  As approximately 118 of these approximately 245 cases (after accounting for duplication) were disposed of in 2025, this leaves the remaining approximately 127 cases likely pending as of December 31, 2025.  This analysis also does not include loitering cases filed before January 1, 2025 that were pending as of December 31, 2025, and thus the total number of pending loitering cases as of this date far exceeds 127.

[11] *See also Orellana v. Moniz*, 808 F. Supp. 3d 167, 182 (D. Mass. 2025) (in certifying class action seeking declaratory relief, holding that "courts do not 'require[] every class member to demonstrate standing when a class is certified'") (quoting *In re Asacol Antitrust Litig.*, 907 F.3d 42, 58 (1st Cir. 2018)) (appeal filed on Dec. 2, 2025 on other grounds; to be argued on May 4, 2026)

6

that "dissimilarities among the members of the plaintiff's all-inclusive class may inform whether alarm is warranted for people or property in each set of circumstances." Def.'s Obj. at 11.[12]

This argument "misconstrues" Plaintiff's "theory of the case." *See B.D. v. Sununu*, No. 21-cv-4-PB, 2024 U.S. Dist. LEXIS 167912, at *32 (D.N.H. Sept. 18, 2024) (Barbadoro, J.). Here, unlike *Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13, 31 (1st Cir. 2019) and *Shanley v. Cadle*, 277 F.R.D. 63, 67-68 (D. Mass. 2011), membership of the class is ascertainable and independent of the "individualized determinations" of each loitering case. Plaintiff does not seek to litigate the application of the loitering law based on whether persons in individualized cases actually "knowingly appear[ed] at a place, or at a time, under circumstances that warrant alarm for the safety of persons or property in the vicinity," *see* RSA 644:6—a framing that would oddly define both the class and its common claims in a way that embraces the very ambiguities in RSA 644:6 that Plaintiff seeks to challenge. Rather, Plaintiff seeks to litigate whether those who now are (or will be) subject to the common and uniform practice of enforcement of RSA 644:6 are having (or will have) a facially unconstitutional law enforced against them. Resolving this question binds the class together, will "drive the resolution of the litigation," *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)), and does not turn on the individual facts of each class member's case.[13]

---

[12] Defendant also argues that commonality is not meet here because "[n]ot a single person currently being prosecuted under RSA 644:6 was identified as a member of the plaintiff's class." Def.'s Obj. at 10-11. Though it is unclear how this point is related to commonality, this is incorrect. The class includes those against whom Defendant "*is enforcing*, or will enforce, RSA 644:6" which, by its plain terms, includes those who are subject to current prosecution under the loitering statute's facially unconstitutional provisions. In any event, the class includes not only those who are presently being subjected to enforcement through prosecution, but also those—like the named Plaintiff—who may be subjected to (i) future charges, and/or (ii) future enforcement on the street through, for example, orders/threats to "move along" or be charged with loitering.

[13] *See Barbara*, 790 F. Supp. 3d at 95 ("factual differences in the parents' domiciles or legal presence do not bear on the typicality of the children's claims"); *B.D.*, 2024 U.S. Dist. LEXIS 167912, at *32 (holding that "[r]esolving [plaintiffs'] claim will turn, not on the contents of any individual case plan"); *Gomes*, 561 F. Supp. 3d at 101 (noting that defendants' argument "fails even to raise a material individual difference among putative class members");

Defendant cites no case in support of its suggestion that facial challenges to "enforcement of a duly enacted law" are somehow categorically not "common" or "typical" under Rule 23. Def.'s Obj. at 11, 12. To the contrary, there is nothing unusual about such a class action lawsuit alleging a common constitutional violation based on the facial invalidity of a law or policy where the lawsuit, as it does here, merely seeks to include "everybody" in the class who is subjected to this common violation. The First Circuit has embraced class certification in a due process case.[14] Courts too have embraced classes in the search/seizure contexts.[15] Typicality is satisfied here for similar reasons. *See Dukes*, 564 U.S. at 349 n. 5 (commonality and typicality "tend to merge").[16]

## IV.    Adequacy is easily satisfied.

Defendant argues that the named Plaintiff is not an adequate class representative because any adverse decision will have preclusive effect on class members who "will be foreclosed from defending against a future prosecution by arguing that RSA 644:6 is facially vague." Def.'s Obj. at 5; *see also id.* at 14. But the risk of a preclusive judgment is an inherent feature of the class

---

*Fitzmorris*, 2023 U.S. Dist. LEXIS 209980, at *57 (noting that challenged practice does "not vary from participant to participant").

Further, contrary to Defendant's reliance on *Dukes* to challenge commonality, *see* Def.'s Obj. at 10-12, *Dukes* is not analogous. *Dukes* concerned a Title VII disparate impact claim where the class was not challenging "any express corporate policy against women," but rather a pervasive, unwritten culture of discrimination against women that invariably would require each plaintiff to "identify[] the specific employment practice that is challenged." 564 U.S. at 344, 357 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)). Here, there can be no credible dispute that a policy exists of enforcing RSA 644:6, which Plaintiff alleges is facially unconstitutional.

[14] *See Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (finding commonality in a class defined as "all motor vehicle owners [sic] residents of the Commonwealth of Puerto Rico who during the years 1997 to 2007 ha[d] paid the compulsory motor vehicle insurance premiums and have also acquired traditional insurance and have not been reimbursed with the compulsory insurance premiums" where those in this class were alleged to be subjected to a common due process violation).

[15] *See, e.g., Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 333-34 (D. Conn. 2001) (class certified in case seeking injunctive relief based on the actions of police defendants in searching, stopping, arresting, or punishing any person based solely upon that person's possession of less than 31 hypodermic syringes or needles, whether sterile or previously-used and whether empty or containing trace amounts of narcotic substances as residue); *see also* 7AA Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1776.1 (3d ed.) (collecting cases in due process and search and seizure context).

[16] Defendant's concession that any declaratory relief as to the individual Plaintiff's facial claims will sufficiently protect the interests "of any putative class members," *see* Def.'s Obj. at 5, further confirms commonality here.

action process to ensure efficient adjudication of common legal questions held by a homogenous and cohesive group with few conflicting interests among its members, not a bug that effectively disqualifies all class representatives.  The way to guard against the risk of a preclusive judgment is to "apply the terms of Rule 23 as written"—including its requirement of adequacy—which are rigorous and "confer sufficient and symmetric guarantees of fairness."[17]  Here, like the other requirements, adequacy is easily met where there is  no "conflict between the named plaintiff and the class members," *see Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991) (internal quotations omitted), as Plaintiff here simply seeks to protect others who, like him, are and will be subjected to the same unconstitutional enforcement of a facially invalid law.

Furthermore, Defendant argues that "there are likely conflicting views of RSA 644:4," thereby suggesting the possibility of antagonistic interests between class members and the class representative.  Def.'s Obj. at 14.  But any "interest of a putative class member in maintaining an allegedly illegal policy" of enforcing a facially unconstitutional loitering statute "simply cannot be the basis for denying class certification."  *See Santiago-Ramos v. Autoridad De Energia Electrica De P.R.*, No. 11-1987(JAG/SCC), 2014 U.S. Dist. LEXIS 203468, at *9 (D.P.R. Mar. 3, 2014).[18]  Here, beyond Defendant's odd insinuation that a person who had a facially unconstitutional law enforced against them would somehow approve of this unconstitutional enforcement, there is no evidence of any antagonistic interests in this case, let alone evidence of

---

[17] *See Fitzmorris*, 2023 U.S. Dist. LEXIS 209980, at *24-25 (*quoting In re White*, 64 F.4th 302, 314 (D.C. Cir. 2023)); *see also General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982) (noting "rigorous analysis" of Rule 23(a)).

[18] *See also Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) (agreeing with trial court's rationale that "an interest by certain putative class members in maintaining the allegedly unlawful policy is not a reason to deny class certification"); *Lanner v. Wimmer*, 662 F.2d 1349, 1357 (10th Cir. 1981) ("It is not fatal if some members of the class might prefer not to have violations of their rights remedied.") (internal quotations omitted); *Sherman ex rel. Sherman v. Township High Sch. Dist. 214*, 540 F. Supp. 2d 985, 993-94 (N.D. Ill. 2008) (rejecting adequacy challenge in a suit concerning a statute's constitutionality because, "[w]hile it may be true that some plaintiff class members support the [statute], such differences of opinion do not amount to 'antagonistic' interests sufficient to undermine class certification").

an intra-class conflict that would "overbalance the common interests of the class members as a whole." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012).

## V.      The proposed class meets the requirements of Rule 23(b)(2).

Defendant suggests that a Rule 23(b)(2) class may be inappropriate here because "this is not a discrimination case." Def.'s Obj. at 16. This too is incorrect. It is true that the Rule 23(b)(2)'s advisory committee statement explains that "[i]llustrative" examples of Rule 23(b)(2) cases "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." *See* Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment. But the statement goes on to say that "[s]ubdivision (b)(2) is not limited to civil-rights cases." *Id*. In other words, all that is required is that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole." *See Reid*, 297 F.R.D. at 192 (quoting rule).

There is nothing extraordinary about the scope of the class sought here under Rule 23(b)(2). Enforcement of RSA 644:6 "is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *See Dukes*, 564 U.S. at 360 (quoting Nagareda, *supra* at 132). The class does not, as Defendant suggests, amorphously include "everyone" in New Hampshire simply because they are "human beings" subject to duly-enacted laws, including RSA 644:6. Def.'s Obj. at 5, 12, 16. Rather, the class includes those who are (or will be) subjected by the police and prosecutors supervised by Defendant to *the specific enforcement of RSA 644:6*, which Plaintiff asserts is facially unconstitutional. Like this provisional class in *Barbara*, the class sought here appropriately includes "everyone" who is or will be subjected to this specific unconstitutional policy and practice—here, the enforcement of a facially invalid law.

10

Respectfully submitted,

*/s/ Gilles R. Bissonnette*
Gilles R. Bissonnette (N.H. Bar. No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
Maria Savarese (N.H. Bar. No. 273285)
AMERICAN CIVIL LIBERTIES UNION OF NEW
  HAMPSHIRE
Concord, NH  03301
Tel.: 603.224.5591
gilles@aclu-nh.org
henry@aclu-nh.org
maria@aclu-nh.org

Date:    April 20, 2025

11